1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DENNIS ROJAS, | ) | 1:10-cv—01403-SKO-HC |
| Plaintiff, | ) | |
| | ) | ORDER DENYING THE PETITION FOR |
| v. | ) | WRIT OF HABEAS CORPUS (DOC. 1) |
| | ) | AND DIRECTING THE CLERK TO |
| RANDY GROUNDS, | ) | ENTER JUDGMENT FOR RESPONDENT |
| Respondent. | ) | |
| _____ | ) | ORDER DECLINING TO ISSUE A |
| | | CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge to conduct all further proceedings in the case, including the entry of final judgment, by manifesting consent in writings signed by the parties or their representatives and filed by Petitioner on August 23, 2010 (doc. 5), and by Respondent on December 21, 1910 (doc. 10). Pending before the Court is the petition, which was filed on August 4, 2010. On February 7, 2011, Respondent filed and served an answer with documentation of

1

1  state court proceedings.  No traverse was filed.

2      I.  Jurisdiction

3      Because the petition was filed after April 24, 1996, the

4  effective date of the Antiterrorism and Effective Death Penalty

5  Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  Lindh

6  v. Murphy, 521 U.S. 320, 327 (1997), cert. denied, 522 U.S. 1008

7  (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

8      A district court may entertain a petition for a writ of

9  habeas corpus by a person in custody pursuant to the judgment of

10 a state court only on the ground that the custody is in violation

11 of the Constitution, laws, or treaties of the United States.  28

12 U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362,

13 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. –, –, 131 S.Ct. 13,

14 16 (2010) (per curiam).  Petitioner claims that in the course of

15 the proceedings resulting in his conviction, he suffered

16 violations of his Constitutional rights.  Further, the challenged

17 judgment was rendered by the Fresno County Superior Court (FCSC),

18 which is located within the territorial jurisdiction of this

19 Court.  28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d).

20     Respondent filed an answer on behalf of Respondent Randy

21 Grounds, Warden of the Correctional Training Facility (CTF) at

22 Soledad, California, where Petitioner has been incarcerated at

23 all pertinent times during this proceeding. Petitioner has thus

24 named as Respondent a person who had custody of the Petitioner

25 within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules

26 Governing Section 2254 Cases in the District Courts (Habeas

27 Rules).  See, Stanley v. California Supreme Court, 21 F.3d 359,

28 360 (9th Cir. 1994).

Accordingly, this Court has jurisdiction over the subject matter of this action and over Respondent Grounds.

II.  Procedural Summary

Following a jury trial in FCSC cases F07903293 and F07904634, Petitioner was convicted of attempting to dissuade a witness in violation of Cal. Pen. Code § 136.1(a)(2), corporal injury to a former cohabitant with a prior conviction in violation of Cal. Pen. Code 273.5(e), criminal threats in violation of Cal. Pen. Code § 422, and misdemeanor contempt of court in violation of Cal. Pen. Code § 166(c)(1).  He was sentenced to an indeterminate term of twenty-five years to life plus ten years for two prior serious felony convictions pursuant to Cal. Pen. Code § 667.  (LD[1] 4, 1, 9.)

Petitioner appealed the judgment to the California Court of Appeal, Fifth Appellate District (CCA) in case number F054388. (LD 4.)  In an unpublished opinion filed on April 29, 2009, the CCA affirmed the judgment.  (LD 4.)

Petitioner sought review in the California Supreme Court (CASC) in case number S173469. (LD 5.)  On July 8, 2009, the CASC denied the petition for review without any statement of reasoning or authority.  (LD 6.)

Petitioner did not file any habeas corpus petitions in the state courts with respect to the judgment.

Petitioner filed his petition in this proceeding on August 4, 2010.

III.  Factual Summary

---

[1]"LD" refers to documents lodged by Respondent with the answer.

In a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness. 28 U.S.C. § 2254(e)(1); Sanders v. Lamarque, 357 F.3d 943, 947-48 (9th Cir. 2004). The following factual summary is taken from the opinion of the California Court of Appeal, Fifth Appellate District, in People v. Rojas, case number F054388. See, Galvan v. Alaska Dep't. Of Corrections, 397 F.3d 1198, 1199 n.1 (9th Cir. 2005) (setting forth a factual summary from the state appellate court's decision).

FACTS

Appellant and Loretta B. had been friends for many years, and they began dating at the end of 2003. In March 2006, they started to live together, but they broke up in September 2006 because of appellant's violence toward her, and they no longer lived together. On October 13, 2006, the court issued a protective order involving a domestic violence incident between appellant and Loretta, and ordered appellant not to come within 100 yards of Loretta, and not to harass, threaten, batter, stop, or stalk her.

Around 7:00 p.m. on January 19, 2007, Loretta went to a party at a home near Shields and Blackstone Avenues in Fresno. There were about nine or 10 women there when she arrived. Appellant and four men arrived at the house between 10:00 p.m. and 11:00 p.m. Loretta did not know that appellant was going to be there.

Appellant smelled of alcohol and appeared intoxicated. Loretta tried to make small talk but he became verbally abusive toward her, acted jealous, accused her of cheating on him, and called her all kinds of names.

Around 12:30 a.m. on January 20, 2007, Loretta decided to leave and walked out of the house. Appellant followed Loretta, called her a bitch, and said he was going to kill her. One of appellant's friends called out that they should get back in the house because the police would come. FN2

4

> FN2. The friend's warning may have referred
> to the existence of the protective order
> against appellant.

Loretta told appellant to leave her alone. She crossed the street and tried to walk away from him. Appellant grabbed her hair and began hitting and kicking her. Appellant repeatedly punched her face with both open and closed fists, and Loretta put up her hands to protect herself. Loretta thought the people at the party saw appellant hit her, but they did not help because they were his friends.

Loretta ran down the street and headed towards a liquor store, but she briefly stopped to take off her high-heeled boots so she could run faster. She ran into the alley behind the liquor store, and appellant caught up with her. He called her a bitch and said he was going to kill her. Appellant repeatedly hit her with closed fists, and kicked and stomped her on the head, face, and hands. At some point, appellant grabbed her purse and scattered the contents and her cellphone on the street. Loretta tried to run but she tripped and fell to the ground, and he continued to kick her. Loretta was screaming and crying for help, and thought appellant was going to kill her.

Loretta managed to get up, she kicked appellant in the ankle, and she ran out of the alley and toward an office building that was next to a canal. She ran behind the office building but appellant caught her, and repeatedly punched her head, face, back, and side. Appellant said he was going to kill her and throw her into the canal.

Appellant stopped hitting Loretta, and she ran into the street, cried for help, and was almost hit by a car. Appellant ran right behind her and kept calling her a bitch. She ran back toward the office building and appellant followed her.

The dispatch

Around 12:30 a.m., Cristomo Luna was in his house on Glen Avenue when he heard screaming. He looked outside and saw a man hitting a woman. The man was holding a pair of boots and the woman was barefoot. The woman seemed to be following the man. The man did not want her to follow him and threw both boots at the woman. The woman fell down and the man punched the woman in the face. The man and woman kept walking and fighting. They crossed the street to the liquor store and went toward the trash cans. Luna could not see them, but he could hear the woman screaming and crying, and the sounds of someone being hit against the trash cans.

Luna decided to call the police because the man was hitting the woman so much that he was afraid he would kill her.

At approximately 12:57 a.m., Fresno Police Officer Douglas Zavala responded to the dispatch, and saw appellant and Loretta walking on the sidewalk, side by side, about 100 yards away from the liquor store. He immediately noticed that Loretta had facial injuries, a bloody lip, and scrapes on her hands, legs, and knees. Loretta was scared, crying and very upset.

Zavala placed appellant in handcuffs and had him sit on the curb. Appellant did not appear to have any injuries, and he seemed calm and relaxed. Loretta was standing next to appellant and she was still crying and upset. Appellant and Loretta were speaking in Spanish to each other. Zavala asked them what was going on. Either appellant or Loretta replied that Loretta got into a fight with some females. Zavala told them that witnesses called in the disturbance and said that it involved a man and a woman, and he wanted to know what actually happened. Zavala did not receive a response. Zavala testified he never told Loretta that she would be arrested if she did not tell the truth.

Loretta testified appellant stopped the assault about two or three minutes before the police arrived. Loretta testified that after he was handcuffed, appellant spoke to her in Spanish, told her to say that some girls jumped her, or he would send someone to hurt her. Loretta testified she decided to lie to the officer because she was afraid appellant would get out of jail and beat her again. Loretta testified she told the officer about the girls, but the officer advised her not to lie because there were witnesses who saw appellant beat her. Loretta claimed the officer also said that he knew appellant did it because he had bloody fists and knuckles, and the officer threatened to take her into custody if she lied. Loretta decided she wasn't going to jail and said that appellant assaulted her.

Officer Peter Ressler arrived at the scene, observed appellant sitting on the curb in handcuffs, and believed he was trying to communicate with Loretta. Ressler escorted Loretta across the street so they could talk without appellant hearing them. Loretta was still crying and upset, and she was not sure whether she wanted to press charges against appellant. Loretta never told Ressler that she was involved in a fight with several females, and she did not mention any threats from appellant or that he threatened to kill her, or that she ran into the street and was almost hit by a car. Ressler testified he never told Loretta that

he knew appellant beat her because his hands were bruised and bloody, and he never threatened Loretta with any consequences if she did not say that appellant hit her.

Officer Zavala found Loretta's purse and cellphone behind the liquor store and returned the items to her. Ressler called for an ambulance at Loretta's request and she was taken to the hospital. Loretta testified she suffered bruises and swelling on her face, palms, hands, arms, wrists, and back, two black eyes, scrapes on her knees, and lumps on her head. She was bleeding from her face, lip, and nose, and had a cracked tooth.

Ressler placed appellant in his patrol car and advised him of the warnings pursuant to Miranda v. Arizona (1966) 384 U.S. 436. Appellant repeatedly said he did not violate the restraining order, he had just been walking by the house, and Loretta was beaten by some girls. Appellant appeared under the influence because his eyes were bloodshot and watery, he smelled of alcohol, and he acted belligerent. Appellant was taken to jail around 2:00 a.m.

Appellant's telephone calls to Loretta

After appellant was taken to jail, he placed several calls to Loretta on her cellphone, and she accepted all the calls even though a recorded message informed her that the calls were placed from the jail. Loretta was very angry at appellant but she accepted the calls to see what he had to say. The calls were tape-recorded, and the recordings and transcripts were introduced at trial.FN3

> FN3. As we will discuss in issue IV, post, the prosecution relied upon the telephone calls as evidence of appellant's consciousness of guilt through his attempts to fabricate evidence and discourage someone from testifying.

Appellant made his first call at 3:11 a.m. on January 20, 2007, while Loretta was being treated at the hospital. Appellant repeatedly asked "What the fuck did you do," and Loretta said she did nothing. Appellant said, "What the fuck am I in here for then," and asked if he was going home. Loretta said he was being mean. Appellant replied, "I'm being mean (mocking tone) ... I swear to God bitch watch ..." Loretta hung up.

At 3:36 a.m., appellant again called her at the hospital, asked if she was going to court, and she said no. Loretta said it was the third time he asked if she was pressing charges and she kept saying no. Appellant

7

spoke to her in Spanish and asked, "why did you tell them it was me," and "why didn't you say we went to the party" and "you got in a fight." Loretta said no and appellant cursed her. Appellant said she better protect him: "When I get out though you need to be out my way though. You feel me?"

At 3:40 a.m., appellant called Loretta again, and asked why she was "hating on me," which meant she was jealous. Loretta said she was not "hating" on him but she was going to go to court. Appellant said she better go because "it's your best opportunity go to court ... I mean well fuck you better go."

At 9:04 a.m., appellant called Loretta and she was out of the hospital. Appellant said he was very sorry and he loved her. Loretta said she hadn't been fooling around and he needed to let it go. Appellant said okay, and asked if she was going to court. Loretta said no. Appellant asked if she gave a statement at the hospital, and Loretta said someone else saw her and called the police. Appellant asked if she needed something, meaning money. Loretta testified the offer was unusual because she never asked him for money whereas he usually asked her for money. Appellant told her to come down to the jail to get some from him, but she did not do so.

At 9:19 a.m., appellant called again, said it was his fault, he was sorry, and to just forget about it. Appellant said he knew he "fucked up" when he saw her face. Loretta said someone else called the police so there were witnesses. Appellant again switched to Spanish, and asked if she said that he hit her. Loretta said the police knew he hit her. Appellant asked if she gave her apartment address and Loretta said yes. Appellant said the police would look for her and asked what she was going to do. Loretta said she would find a place in Madera because she did not need to be around this.

As the call continued, appellant told Loretta, "I'm going to say that I didn't do anything and the case will be lost. If you don't go the case will be dismissed, if you do go (unintelligible) you know how much they are going to give me right?" Loretta asked how much, and appellant said a lot. Appellant again spoke in Spanish and told Loretta to write to him but not to sign her name. Appellant said they were going to "look for you fiercely," and "hopefully they don't find you." Appellant said: "I hope they won't find you, don't get there," but she should say that she "got in a fight with those bitches." Loretta said the police seemed to know what happened. Appellant asked who told the police about the restraining order. Loretta said

she did not tell the police.

Appellant again told Loretta not to go to court, but asked what she would say if called. Loretta said she would say nothing happened because they would "put your ass away." Appellant said he was sorry, he loved her, and he should have listened to the others when they said to get back into the house. Appellant said that it was "the worse I've done to you. I think that's it. I don't want to fucking hit you like that no more." Loretta said she had never been beaten like that by anyone, and she didn't know why she put up with him. Appellant repeatedly said he was sorry and he loved her.

At 3:57 p.m. on January 22, 2007, appellant was still in jail and called his nephew, Oscar, and said he got into a domestic violence case with Loretta and he "fucked her up." Appellant spoke in Spanish, and asked Oscar to call her because his court date was coming up and they were going to look for her. Oscar placed a three-way call to Loretta.

Loretta accepted the call and spoke to Oscar, she could not hear appellant's voice, and Oscar relayed appellant's messages to her. Appellant wanted to know if she was alright, and whether they had called her for court. Loretta said she was not alright. Appellant told her not to go to court, they would look for her the entire month, she needed to hide, and she should hide at someone's house.

Additional trial evidence

At trial, the parties stipulated that on October 13, 2006, the court issued a protective order in a domestic violence case for appellant not to come within 100 yards of Loretta, and not to harass, threaten, batter, stop, or stalk her, and the order was effective until 2009. The parties also stipulated that on October 13, 2006, appellant suffered a misdemeanor conviction for violating Penal Code section 273.5, subdivision (a), corporal injury to a former cohabitant, and Loretta was the victim.FN4

> FN4. As we will discuss post, the court held that appellant's prior misdemeanor conviction for a domestic violence offense was admissible as propensity evidence pursuant to section 1109.

Loretta testified appellant hit her during the October 2006 incident, and the instant case marked the second time he hit her. She was impeached with her preliminary hearing testimony in this case, where she testified

there was a prior domestic violence incident between
them but it was not serious, and the instant case was
the first time he "ever put hands on me." Loretta
clarified that "[a]ll the other times he hit me," and
this incident was "actually the first time he ever beat
me like this."

Loretta testified that she was initially afraid to
testify against appellant and did not know what to do.
She realized appellant could be put away for a long
time but she did not care because of how badly he beat
her. Loretta used to love appellant but no longer had
any feelings for him, and she was afraid of him. As of
trial, Loretta testified she had been clean of
controlled substances for six months.FN5

> FN5. Loretta admitted she suffered a prior
> petty theft conviction in April 2004
> (Pen.Code § 484, subd. (a).)

(LD 4, 2-9.)

IV.   <u>Standard of Decision and Scope of Review</u>

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on
behalf of a person in custody pursuant to the
judgment of a State court shall not be granted
with respect to any claim that was adjudicated
on the merits in State court proceedings unless
the adjudication of the claim—

(1) resulted in a decision that was contrary to,
or involved an unreasonable application of, clearly
established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light
of the evidence presented in the State court
proceeding.

Clearly established federal law refers to the holdings, as
opposed to the dicta, of the decisions of the Supreme Court as of
the time of the relevant state court decision. <u>Cullen v.
Pinholster</u>, - U.S. -, 131 S.Ct. 1388, 1399 (2011); <u>Lockyer v.
Andrade</u>, 538 U.S. 63, 71 (2003); <u>Williams v. Taylor</u>, 529 U.S.
362, 412 (2000).  It is thus the governing legal principle or

1  principles set forth by the Supreme Court at the pertinent time.

2  Lockyer v. Andrade, 538 U.S. 71-72.

3       A state court's decision contravenes clearly established

4  Supreme Court precedent if it reaches a legal conclusion opposite

5  to, or substantially different from, the Supreme Court's or

6  concludes differently on a materially indistinguishable set of

7  facts.  Williams v. Taylor, 529 U.S. at 405-06.  The state court

8  need not have cited Supreme Court precedent or have been aware of

9  it, "so long as neither the reasoning nor the result of the

10 state-court decision contradicts [it]."  Early v. Packer, 537

11 U.S. 3, 8 (2002).  A state court unreasonably applies clearly

12 established federal law if it either 1) correctly identifies the

13 governing rule but then applies it to a new set of facts in a way

14 that is objectively unreasonable, or 2) extends or fails to

15 extend a clearly established legal principle to a new context in

16 a way that is objectively unreasonable.  Hernandez v. Small, 282

17 F.3d 1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407.

18 An application of clearly established federal law is unreasonable

19 only if it is objectively unreasonable; an incorrect or

20 inaccurate application is not necessarily unreasonable.

21 Williams, 529 U.S. at 410.

22      A state court's determination that a claim lacks merit

23 precludes federal habeas relief as long as it is possible that

24 fairminded jurists could disagree on the correctness of the state

25 court's decision.  Harrington v. Richter, 562 U.S. -, 131 S.Ct.

26 770, 786 (2011).  Even a strong case for relief does not render

27 the state court's conclusions unreasonable.  Id.  To obtain

28 federal habeas relief, a state prisoner must show that the state

11

court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87. The standards set by § 2254(d) are "highly deferential standard[s] for evaluating state-court rulings" which require that state-court decisions be given the benefit of the doubt, and the Petitioner bear the burden of proof. Cullen v. Pinholster, 131 S. Ct. at 1398. Further, habeas relief is not appropriate unless each ground supporting the state court decision is examined and found to be unreasonable under the AEDPA. Wetzel v. Lambert, --U.S.--, 132 S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. at 1398. Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1). Id. at 1400. Further, as previously noted, 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.

In determining the appropriate deference to be given to a state court decision, it must be determined whether the decision was on the merits within the meaning of 28 U.S.C. § 2254(d), which limits habeas relief with respect to "any claim that was

12

adjudicated on the merits in State court proceedings...."  A state has adjudicated a claim on the merits within the meaning of § 2254(d) when it decides the petitioner's right to relief on the basis of the substance of the constitutional claim raised, rather than denying the claim because of a procedural or other rule precluding state court review of the merits.  Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004).  Here, the CCA addressed all Petitioner's claims on the merits in its decision on direct appeal.

A state court's decision to deny discretionary review, such as a decision of the California Supreme Court to deny a petition for discretionary review of a state court of appeal's decision on direct appeal in a non-capital case, is not a decision on the merits, but rather is only a determination that the California Supreme Court will not consider the case on the merits.  Williams v. Cavazos, 646 F.3d 626, 636 (9th Cir. 2011), cert. grtd. in part,[2] Cavazos v. Williams, --- S.Ct. ----, 2012 WL 104740  (No. 11-465, U.S. Jan 13, 2012) (citing Harrington v. Richter, 131 S.Ct. 770, 784-85 (2011); Cal. R. Ct. 8.500; and Campter v. Workers' Comp. Appeals Bd., 3 Cal.4th 679 (1992)).  There is a rebuttable presumption that where there is one reasoned state judgment rejecting a federal claim, a later unexplained order upholding the judgment or rejecting the same claim rests upon the same ground.  Ylst v. Nunnemaker, 501 U.S. 797, 801-02 (1991).

---

[2] Certiorari was granted as to the limited issue of whether a habeas petitioner's claim has been "adjudicated on the merits" for purposes of 28 U.S.C. § 2254(d) where the state court denied relief in an explained decision but did not expressly acknowledge a federal-law basis for the claim.  Id.

Thus, this Court will "look through" the state supreme court's denial of discretionary review to the CCA's decision, which was the last reasoned state court decision.  Id. at 803-04; Williams v. Cavazos, 646 F.3d at 636; Taylor v. Maddox, 366 F.3d 992, 998 n.5 (9th Cir. 2004).

V.   Admission of Prior Conviction of Domestic Violence

In his first and second claims, Petitioner argues that his rights to a fair trial and due process of law were violated by the admission, pursuant to Cal. Evid. Code § 1109, of his 2006 misdemeanor conviction of corporal injury to a former co-habitant in violation of Cal. Pen. Code § 273.5 as evidence of his propensity to commit the same offense charged in the instant case.[3]

A.   The State Court Decision

The state court decision concerning the admission of Petitioner's prior conviction is as follows:

I. Admissibility of prior domestic violence evidence

Appellant contends the court improperly permitted the prosecution to introduce evidence of his prior misdemeanor conviction for corporal injury to a former cohabitant, as propensity evidence under section 1109. Appellant argues the fact of the misdemeanor conviction was prejudicial because it resulted from a guilty plea he entered simply to dispose of the charge, and the admission of such evidence requires reversal of his convictions.

A. Background.

The prosecution filed a motion in limine to introduce evidence of appellant's prior misdemeanor conviction

---

[3] Although Petitioner refers generally to a violation of his Fourth Amendment rights (pet. 5), he does not allege any supporting facts, inform the Court of his legal theory or arguments, or provide any authority in support of his reference.  Accordingly, the Court does not address any Fourth Amendment violation.

14

for corporal injury to a former cohabitant (Pen.Code § 273.5, subd. (a)), which occurred in October 2006. The prosecution argued such evidence was admissible as propensity evidence in a domestic violence case under section 1109, and the probative value was extremely high because it involved the same victim and occurred shortly before the incident in this case.FN6

> FN6. The prosecution offered an alternate theory of admissibility under section 1101, subdivision (b), to prove motive, intent, and absence of mistake, appellant filed opposition, and the court found the prior conviction was inadmissible under that section.

Appellant filed opposition and argued the evidence was inadmissible under section 1109, and prejudicial under section 352, because the prior misdemeanor conviction was the result of a plea. Appellant cited the police report for the October 2006 incident, that Loretta said appellant kicked in the door to her apartment, grabbed her by the arms, hit her six times in the face, head, and shoulder, and kicked her in the legs.

Appellant asserted the charges were false, conceded he suffered a misdemeanor conviction, but argued the prior conviction had "questionable validity" and was prejudicial because "it is not unknown for in-custody defendants to enter into misdemeanor pleas at an early stage of the proceedings in order to obtain their release from custody." Appellant also cited to Loretta's testimony at the preliminary hearing in this case, that the prior incident was not serious and the instant case was the first time appellant "ever put hands" on her, as further indication of the prejudicial impact of such evidence.

During argument on the motion, defense counsel stated he represented appellant in the prior case, appellant was charged with a felony, and appellant accepted the prosecution's offer to plead to a misdemeanor simply so he could get out of custody. Counsel argued the prior conviction was prejudicial since it was only a misdemeanor that resulted from a change-in-plea "rather than something which was decided after a contested hearing," which "limits the probative value. There was never actually a hearing on it." Defense counsel also argued that such evidence was prejudicial because it would involve undue consumption of time.

The court found the prior conviction was admissible because section 1109 specifically permitted propensity evidence of a prior domestic violence conviction in a domestic violence case. The court noted that propensity

15

evidence was still subject to section 352, but such prejudice meant something "other than proof of propensity." The court further noted the prior conviction was recent, it involved the same type of charge as in the instant case (Pen.Code § 273.5), and a misdemeanor was admissible for section 1109 purposes.

Defense counsel asked for the opportunity to introduce witnesses to refute the underlying allegations of the prior misdemeanor offense. The court asked for an offer of proof and defense counsel declined at that point. At the next day's hearing, however, appellant stipulated to the existence of both his prior misdemeanor conviction and the protective order.

B. Analysis.

Appellant contends the court improperly admitted his prior misdemeanor conviction as propensity evidence under sections 1109 and 352. Evidence of other acts is generally inadmissible to prove the defendant's propensity to commit the charged acts. (§ 1101, subd. (a).) However, the Legislature has created exceptions to this rule in cases involving sexual offenses (§ 1108) and domestic violence (§ 1109). (*People v. Reyes* (2008) 160 Cal.App.4th 246, 251 (*Reyes*).) FN7

> FN7. Section 1108, which allows admission of evidence of uncharged sexual offenses, and section 1109, allowing admission of evidence of uncharged domestic violence, are "virtually identical," and cases which have interpreted section 1108 have been relied upon to resolve similar issues involving section 1109. (*People v. Johnson* (2000) 77 Cal.App.4th 410, 417 (*Johnson*); *People v. Johnson* (2008) 164 Cal.App.4th 731, 739; *People v. Brown* (2000) 77 Cal.App.4th 1324, 1333 (*Brown*).)

Section 1109 states that, subject to exceptions not applicable here, "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." (§ 1109, subd. (a).) Evidence of acts occurring within 10 years of the charged offense is presumptively admissible; older instances are admissible if the court finds their admission to be in the interest of justice. (§ 1109, subd. (e).)

Section 1109 reflects a legislative policy determination that the use of propensity evidence is

particularly appropriate in domestic violence cases
because of the inherent probative value of such
evidence in domestic violence prosecutions. (*Brown,
supra,* 77 Cal.App.4th at pp. 1333-1334; *People v.
Hoover* (2000) 77 Cal.App .4th 1020, 1027-1028 (*Hoover*);
*Johnson, supra*, 77 Cal.App.4th at p. 419.) "'[E]vidence
of other acts is important in domestic violence cases
because of the typically repetitive nature of domestic
violence crimes, and because of the acute difficulties
of proof associated with frequently uncooperative
victims and third-party witnesses ... who may fear
retaliation from the abuser and do not wish to become
involved.' [Citation.]" *(Brown, supra*, 77 Cal.App.4th
at p. 1333.)

As defined by section 1109 and related statutes, prior
acts of domestic violence include abuse committed
against an adult who is a cohabitant or former
cohabitant of the suspect, and includes violations of
Penal Code section 273.5, corporal injury to a
cohabitant or former cohabitant. (*People v. Dallas*
(2008) 165 Cal.App.4th 940, 952-953.) In the instant
case, appellant was charged in count II with felony
corporal injury to a former cohabitant with a prior
conviction, in violation of Penal Code section 273.5,
subdivision (e). The prosecution sought to introduce
his prior misdemeanor conviction for violation of the
same offense-corporal injury to a former cohabitant, in
violation of Penal Code section 273.5, subdivision (a).
Thus, appellant's prior misdemeanor conviction was
admissible as propensity evidence in this domestic
violence case under section 1109.

To protect the defendant's due process rights, however,
evidence admissible under section 1109 is subject to
exclusion under section 352. (*Hoover, supra*, 77
Cal.App.4th at pp. 1028-1029; *People v. Escobar* (2000)
82 Cal.App.4th 1085, 1096 *(Escobar*).) That is, the
evidence may not be admitted if its probative value is
substantially outweighed by the probability that it
will consume an undue amount of time or create a
substantial danger of undue prejudice, confusion of
issues, or misleading the jury. (*Hoover, supra*, 77
Cal.App.4th at pp. 1028-1029.) A trial court's
determination under section 352 is reviewed for abuse
of discretion. (*Hoover, supra*, 77 Cal.App.4th at p.
1029; *People v. Jenkins* (2000) 22 Cal.4th 900, 1008.)

Evidence has probative value when it is relevant to the
issues before the jury, i.e., when it has any tendency
in reason to prove or disprove a disputed fact in
issue. *(People v. Padilla* (1995) 11 Cal.4th 891, 925,
overruled on another point in *People v. Hill* (1998) 17
Cal.4th 800, 823, fn. 1.) "The 'prejudice' referred to

in ... section 352 applies to evidence which uniquely
tends to evoke an emotional bias against defendant as
an individual and which has very little effect on the
issues. In applying section 352, 'prejudicial' is not
synonymous with 'damaging.'" *(People v. Yu* (1983) 143
Cal.App.3d 358, 377; *People v. Bolin* (1998) 18 Cal.4th
297, 320.)

Appellant contends that evidence of his prior
conviction for corporal injury on a cohabitant was
prejudicial under section 352 because the offense was
only a misdemeanor. However, section 1109 expressly
permits the admission of "evidence of the defendant's
commission of *other* domestic violence." (§ 1109, subd.
(a)(1), italics added.) It encompasses both charged and
uncharged acts of domestic violence. (See, e.g., *People
v. Falsetto* (1999) 21 Cal .4th 903, 917-918 (*Falsetta*)
[section 1108]; *Brown, supra*, 77 Cal.App.4th at pp.
1332-1334 [section 1109]; *People v. Garcia* (2001) 89
Cal.App.4th 1321, 1331-1332 [section 1109].) In
addition, there is no limitation on whether the other
acts occurred before or after the offense for which the
defendant is on trial. (See, e.g., *People v. Medina*
(2003) 114 Cal.App.4th 897, 902-903 [section 1108].)
Moreover, evidence of a prior act of domestic violence
may be introduced as propensity evidence even if the
defendant was acquitted of criminal charges based upon
that incident. (See, e.g., *People v. Mullens* (2004) 119
Cal.App.4th 648, 665-668 [prior sexual acts admissible
under section 1108 even though resulted in acquittal,
but trial court erred in excluding evidence of the
acquittal itself].) Thus, the mere fact that
appellant's prior conviction was a misdemeanor did not
render it inadmissible under section 1109 or
prejudicial under section 352.

Appellant further contends the evidence was prejudicial
simply because he entered a plea to the misdemeanor
offense and there are "doubts about the accuracy of the
prior adjudication." Appellant has not raised any
constitutional challenges to the validity of his plea
but reasserts the arguments he made before the trial
court, when he opposed introduction of the prior
conviction because of its "questionable validity",
simply because "it is not unknown for in-custody
defendants to enter into misdemeanor pleas at an early
stage of the proceedings in order to obtain their
release from custody."

As we have already noted, however, section 1109 permits
the introduction of both charged and uncharged
offenses, and due process is not offended simply
because the prior act of domestic violence involved a
misdemeanor plea, if the evidence is otherwise not

18

prejudicial under section 352. (*Hoover, supra*, 77 Cal.App.4th at pp. 1028-1029.) Moreover, appellant sought to introduce evidence to undermine to probative value of the prior misdemeanor conviction and explain the underlying circumstances of the plea. The court was willing to consider an offer of proof on the matter, and such evidence may have been admissible at trial. (See, e.g., *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1315 *(Jennings)* [defendant introduced evidence to explain why he entered a misdemeanor plea admitted as section 1109 propensity evidence].) At the next hearing, however, appellant indicated he would stipulate to the existence of both the protective order and the prior misdemeanor conviction, and he never made the offer of proof to support his averments as to the nature and circumstances under which he entered his plea. Having made that tactical decision, appellant has accordingly waived any contentions on that basis.

Appellant also contends the section 1109 evidence was prejudicial based upon Loretta's testimony at the preliminary hearing in this case, in which she offered the qualified explanation that the prior offense was not serious. The evidence of the prior act of domestic violence was extremely probative given Loretta's admission that she was extremely reluctant to testify against appellant. Her characterization of the incident was not determinative on the question of admissibility, but such evidence was properly admitted to impeach her trial testimony.

We cannot say the court abused its discretion in finding the section 1109 evidence admissible under section 352. The prior misdemeanor offense occurred barely three months before the incident in this case and it involved the same victim. "Particularly in view of the fact that the subject evidence involved defendant's history of similar conduct against the same victim, the evidence was not unduly inflammatory. The subject evidence was also not remote; its presentation was not confusing or time-consuming. Instead, the evidence was highly relevant and probative of the issues in this case. [Citations.]" (*Hoover, supra*, 77 Cal.App.4th at p. 1029; see also *People v. Rucker* (2005) 126 Cal.App.4th 1107, 1119 (*Rucker*).) Moreover, based upon appellant's insistence of stipulating to the prior misdemeanor conviction, the jury herein only heard the mere fact that appellant suffered the prior conviction and did not hear any of the underlying circumstances, such that the stipulation itself was no more inflammatory than the charged offense in this case. (See, e.g., *People v. Williams* (2008) 159 Cal.App. 4th 141, 147.)

19

Finally, even if the trial court abused its discretion and erroneously admitted evidence of the prior misdemeanor conviction, any error is not prejudicial. (*Brown, supra*, 77 Cal.App.4th at p. 1337; *People v. Watson* (1956) 46 Cal.2d 818, 856.) The evidence of the prior act of domestic violence was limited to the stipulation. In contrast, Loretta testified at length about appellant's conduct the night of the assault, how he repeatedly followed her, punched and kicked her, and threatened to kill her and throw her into the canal. In addition, appellant admitted he beat Loretta during the multiple calls from the jail, as he tried to dissuade her from going to court. It is not reasonably probable that a result more favorable to appellant would have resulted if the evidence had been excluded.

II. Section 1109 and due process

Appellant next contends the admission of propensity evidence under section 1109 violates his constitutional right to due process of law.FN8 As appellant acknowledges, the identical argument has been repeatedly rejected as meritless. (*Falsetta, supra*, 21 Cal.4th at pp. 917-918 [section 1108]; *People v. Cabrera* (2007) 152 Cal.App.4th 695, 703-704 (*Cabrera*) [section 1109]; *Rucker, supra*, 126 Cal.App.4th at p. 1120 [section 1109]; see also *Escobar, supra*, 82 Cal.App.4th at pp. 1095-1096 [section 1109] and cases cited within.)

> FN8. Respondent argues appellant waived review of his due process claim because he did not raise the issue before the trial court. However, appellant's constitutional issue has not been waived since it involves a pure question of law based upon undisputed facts. (*People v. Hines* (1997) 15 Cal.4th 997, 1061; *People v. Valladoli* (1996) 13 Cal.4th 590, 606.)

"[A]dmission of propensity evidence is not unfair so long as the trial court is required to balance the probative value of the evidence against its prejudicial impact under ... section 352." (*Cabrera, supra*, 152 Cal.App.4th at p. 704.) "In short, the constitutionality of section 1109 under the due process clauses of the federal and state constitutions has now been settled." (*Jennings, supra*, 81 Cal.App.4th at p. 1310.) Appellant contends *Falsetta* was wrongly decided, but we are bound by the California Supreme Court's ruling in that case. (*Rucker, supra*, 126 Cal.App.4th at p. 1120; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Moreover, "[w]e agree with the rule of these recent cases and, accordingly, reject

1
2
appellant's due process claim." (*Escobar, supra,* 82
Cal.App.4th at p. 1096.)

3
(LD 4, 9-16.)

4
      B.  <u>Analysis</u>

5
      Insofar as Petitioner contends that the state court's

6
application of Cal. Evid. Code § 1109 was merely erroneous, his

7
claim must be dismissed.  A federal court reviewing a habeas

8
petition pursuant to 28 U.S.C. § 2254 has no authority to review

9
alleged violations of a state's evidentiary rules.  <u>Jammal v. Van</u>

10
<u>de Kamp</u>, 926 F.2d 918, 919 (9th Cir. 1991).  Federal habeas

11
relief is available to state prisoners only to correct violations

12
of the United States Constitution, federal laws, or treaties of

13
the United States; it is not available to retry a state issue

14
that does not rise to the level of a federal constitutional

15
violation.  28 U.S.C. § 2254(a); <u>Wilson v. Corcoran</u>, 131 S.Ct. at

16
16; <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  In a habeas

17
corpus proceeding, this Court is bound by the California Supreme

18
Court's interpretation of California law unless it is determined

19
that the interpretation is untenable or a veiled attempt to avoid

20
review of federal questions.  <u>Murtishaw v. Woodford</u>, 255 F.3d

21
926, 964 (9th Cir. 2001).  Thus, this Court does not have

22
jurisdiction under § 2254 to undertake the review Petitioner

23
seeks of state law claims.

24
      With respect to Petitioner's claim that his rights to due

25
process of law and a fair trial were violated by the admission of

26
his prior misdemeanor conviction pursuant to Cal. Evid. Code

27
28

21

§ 1109,[4] however, Petitioner is entitled to relief only if the evidence alleged to have been unfairly admitted was so arbitrary or prejudicial that its admission rendered the trial fundamentally unfair and violated fundamental conceptions of justice. <u>Perry v. New Hampshire</u>, 132 S.Ct. 716, 723 (2012); <u>Estelle v. McGuire</u>, 502 U.S. at 67-69; <u>Holley v. Yarborough</u>, 568 F.3d 1091, 1101 (9th Cir. 2009).

Even the clearly erroneous admission of evidence that renders a trial fundamentally unfair may not permit the grant of habeas relief unless forbidden by clearly established federal law as established by the Supreme Court. <u>Holley v. Yarborough</u>, 568 F.3d at 1101. The Supreme Court has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such clearly established federal law, the Court cannot conclude that the state court's ruling was an unreasonable application. <u>Id.</u> at 1101 (citing <u>Carey v.</u>

---

[4] California Evidence Code § 1109 provides, in pertinent part, as follows:

> (a) (1) Except as provided in subdivision (e) or (f), in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352.

This provision modified the general rule that character evidence is inadmissible to prove a defendant's conduct on a specified occasion. <u>See</u>, Cal. Evid. Code § 1101; <u>People v. Falsetta</u>, 21 Cal.4th 903, 911 (1999). However, § 1109 is limited by Cal. Evid. Code § 352, which allows the court, in the exercise of its discretion, to exclude evidence if its probative value is substantially outweighed by the undue consumption of time or substantial danger of undue prejudice, confusion of the issues or the risk of misleading the jury posed by its admission.

1  <u>Musladin</u>, 549 U.S. 70, 77 (2006)).

2      Review of decisions of the United States Supreme Court
3  reveals that admission of evidence of prior convictions during
4  the guilt phase is not a violation of due process where there was
5  a valid state purpose, such as enforcement of a habitual offender
6  statute, and no sufficient danger of unfairness, as when the
7  trial court instructed the jury to limit its use of the evidence
8  to a sentence enhancement, and the trial court retained
9  discretion to limit or prohibit the admission of particularly
10  prejudicial evidence even though it was admissible under an
11  accepted rule of evidence.  <u>Spencer v. Texas</u>, 385 U.S. 554, 562-
12  64 (1983).  The Court has noted that common law permits such
13  evidence to be admitted where it is probative of intent, an
14  element of the crime, motive, a system of criminal activity, or
15  when the defendant has testified or has otherwise raised the
16  issue of his character.  <u>Id.</u> at 560-61.  The Court has further
17  recognized that any unfairness resulting from admitting prior
18  convictions is more often than not balanced by their probative
19  value.  <u>Marshall v. Lonberger</u>, 459 U.S. 422, 438 n.6 (1983).  The
20  Court has expressly left open the issue of whether or not the Due
21  Process Clause is violated by a state court's admission of prior
22  crimes evidence to show propensity to commit a crime.  <u>Estelle v.</u>
23  <u>McGuire</u>, 502 U.S. 62, 75 n.5.

24      Evidence introduced by the prosecution often raises more
25  than one inference, and where some of the inferences are
26  permissible, it is up to the jury to draw the inferences in light
27  of the court's instructions.  <u>Jammal v. Van de Kamp</u>, 926 F.2d

28

Case 1:10-cv-01403-SKO   Document 13   Filed 05/07/12   Page 24 of 40

918, 920 (9th Cir. 1991).  Admission of evidence violates due
process only if there are no permissible inferences that jury may
draw from it, and the evidence is of such quality as necessarily
prevents a fair trial.  Boyde v. Brown, 404 F.3d 1159, 1172-73
(9th Cir. 2005) (quoting Jammal v. Van de Kamp, 926 F.2d 918,
920); Windham v. Merkle, 163 F.3d 1092, 1103 (9th Cir. 1998).

Admission of evidence of other crimes has been upheld where
the evidence was relevant to a material element of the crime,
there was sufficient proof that the defendant committed the prior
act, the conduct or conviction was not too remote in time, the
danger of undue prejudice was reduced by instructions limiting
the use of the evidence, and the probative value of the evidence
was not substantially outweighed by prejudice.  See, Boyde v.
Brown, 404 F.3d  at 1172 (evidence of defendant's prior robbery
of the same store relevant to show charged crime shared certain
characteristics with other crimes the defendant had committed);
Walters v. Maass, 45 F.3d 1355, 1347 (9th Cir. 1995) (to
establish intent in a sexual assault case, admission of evidence
that the defendant used an identical invitation to search for a
non-existent German shepherd to facilitate his kidnaping and
sexual assault of another child did not to violate due process);
Colley v. Sumner, 784 F.2d 984, 990 (9th Cir. 1986) (to show
intent and identity, admission of testimony that the defendant
took both victims out driving, assaulted them in roughly the same
place within several days of each other, commenced his attack by
choking them, and expressed remorse, distress, and confusion
during or after the act relevant and not violative of the

1  defendant's right to a fair trial); <u>George v. Almager</u>, 674

2  F.Supp.2d 1160, 1168 (S.D.Cal. 2009) (to bolster credibility of

3  an eyewitness and thereby demonstrate the identity of a

4  perpetrator, due process not violated by admission of evidence of

5  the defendant's previous choking of the witness as it was

6  relevant to credibility and thus supported a logical inference

7  unrelated to the defendant's character; potential prejudice from

8  the choking evidence did not so outweigh its probative value

9  because the evidence did not have a highly inflammatory effect in

10 light of the violent nature of the charged offenses); <u>see</u> <u>also</u>,

11 <u>United States v. LeMay</u>, 260 F.3d 1018, 1024-27 (9th Cir. 2001)

12 (noting the similar provisions of Cal. Evid. Code §§ 1109 and

13 352, and upholding pursuant to Fed. R. Evid. 414 admission of

14 evidence of prior sex crimes because the evidence was relevant,

15 prior crimes were highly similar to the charged crimes, and

16 evidence bolstered the credibility of testifying victims after

17 their statements were challenged; further, because Rule 414 was

18 limited by Rule 403, which directs judges to exclude any evidence

19 submitted under Rule 414 that is more prejudicial than probative,

20 the court had engaged in a balancing process to exclude

21 potentially devastating evidence of little probative value,

22 thereby eliminating any due process concerns).

23     Here, the state court reasonably determined that admitting

24 Petitioner's prior misdemeanor conviction did not violate

25 Petitioner's right to a fair trial and due process of law.  The

26 state court enunciated constitutional standards that were not

27 inconsistent with the pertinent standards of the Due Process

28

1  Clause.  It recognized the probative value of the evidence and

2  determined that the evidence was highly relevant because it was

3  recent and involved the same victim, who had indicated reluctance

4  to testify against Petitioner, and whose credibility had been

5  impeached.  The prior conduct was the subject of a conviction,

6  and although Petitioner initially sought to introduce evidence to

7  controvert the factual basis of his guilty plea, he ultimately

8  stipulated to the conviction.  Thus, it was not unreasonable for

9  the state court to conclude that there was sufficient proof that

10 the defendant committed the prior act.  As discussed more fully

11 in the following section, the danger of undue prejudice was

12 reduced by instructions limiting the use of the evidence.  The

13 state court concluded that as the prior conviction was the

14 subject of a stipulation, it was not unduly inflammatory,

15 particularly in the context of the present case, which involved

16 evidence of Petitioner's extreme brutality.  The state court

17 reasonably determined that the probative value of the evidence

18 was not substantially outweighed by prejudice.

19     In sum, the Court concludes that the state court's  decision

20 to uphold the admission of Petitioner's prior misdemeanor

21 conviction was not contrary to, or an unreasonable application

22 of, clearly established federal law.  The admission of the

23 evidence had neither a harmful nor injurious effect on the

24 verdict, and was not so arbitrary or prejudicial that its

25 admission rendered the trial fundamentally unfair and violated

26 fundamental conceptions of justice.  Accordingly, Petitioner is

27 not entitled to relief on this claim, which will be denied.

28

VI.   Instructional Error

    A.   The State Court Decision

V. Reasonable Doubt Instruction.

Appellant's final issue is a challenge to CALCRIM No.
220, the reasonable doubt instruction. He argues the
instruction failed to properly define the presumption
of innocence and the prosecution's burden of proof, and
points to particular phrases within the instruction
which purportedly negate the presumption of innocence.

Appellant's general and specific challenges to CALCRIM
No. 220 have been considered and rejected in numerous
decisions. *(People v. Garelick* (2008) 161 Cal.App.4th
1107, 1117-1119; *People v. Stone* (2008) 160 Cal.App.4th
323, 331-332; *People v. Campos* (2007) 156 Cal.App.4th
1228, 1237-1238; People v. Guerrero (2007) 155
Cal.App.4th 1264, 1267-1269; *People v. Flores* (2007)
153 Cal.App.4th 1088, 1091-1093; *People v. Hernandez
Rios* (2007) 151 Cal.App.4th 1154, 1156-1157; *People v.
Westbrooks* (2007) 151 Cal.App.4th 1500, 1505-1510;
*Lisenbee v. Henry* (9th Cir.1999) 166 F.3d 997,
999-1000.) We agree with the analysis and conclusions
of these cases.

(LD 4, 22.)

    B.   Additional Background

CALCRIM 220, the instruction on reasonable doubt given by
the trial court, was as follows:

A defendant in a criminal case is presumed to be
innocent.  This presumption requires that the People
prove a defendant guilty beyond a reasonable doubt.
Whenever I tell you the People must prove something,
I mean they must prove it beyond a reasonable doubt
unless I specifically tell you otherwise.

Proof beyond a reasonable doubt is proof that leaves
you with an abiding conviction that the charge is
true.  The evidence need not eliminate all possible doubt
because everything in life is open to some possible or
imaginary doubt.

In deciding whether the People have proved their case
beyond a reasonable doubt, you must impartially compare
and consider all the evidence that was received throughout
the entire trial.  Unless the evidence proves the
defendant guilty beyond a reasonable doubt, he is
entitled to an acquittal and you must find him

1    not guilty.

2  (I Supp. No. 2 CTA, 7.)

3    With respect to applying the law concerning the burden of

4  proof, the trial court in only one instance directed the jury to

5  employ the standard of a preponderance of the evidence.  The

6  instruction concerned determining whether the defendant had in

7  fact committed uncharged domestic violence, which the court

8  instructed could be considered only for the purpose of

9  determining Petitioner's propensity to inflict injury on a former

10 cohabitant.

11   The two standards of proof were distinguished and defined.

12 The jury was told that if the People did not prove the commission

13 of the uncharged violence by a preponderance, then evidence of

14 the uncharged conduct must be disregarded entirely.  The jury was

15 also told that if they concluded that the defendant did commit

16 the uncharged conduct, then they could conclude that the

17 defendant was likely to, and did commit, the crime of inflicting

18 injury on a former cohabitant, but it was only one factor and was

19 not sufficient by itself to prove Petitioner's guilt of the

20 offense.  The instruction expressly stated that the People must

21 still prove each element of every charge beyond a reasonable

22 doubt.  (Id. at 34 [CALCRIM 852].)

23   The jury was instructed that it must decide the facts using

24 only the evidence presented in the courtroom.  (Id. at 8 [CALCRIM

25 222].)  The jury was further instructed that facts could be

26 proved by direct or circumstantial evidence, which were defined,

27 or by a combination of both; both types were acceptable, and

28

1  neither was necessarily more reliable, or entitled to greater

2  weight, than the other.  The jury was expressly told that it must

3  decide whether a fact in issue has been proved based on all the

4  evidence.  As to each fact essential to a conclusion based on

5  circumstantial evidence, the jury had to be convinced that the

6  People had proved each fact essential to the conclusion beyond a

7  reasonable doubt.  The court instructed the jury that when

8  considering circumstantial evidence, the jury must accept only

9  reasonable conclusions and reject any that are unreasonable.

10 (Id. at 10-11 [CALCRIM 223-224].)

11      Further, in evaluating the credibility of a witness, the

12 jurors were to use their common sense and experience to evaluate

13 the testimony of each witness using specified factors concerning

14 the witness and the testimony; before concluding that the

15 testimony of one witness proved a fact, the jurors should

16 carefully review all the evidence.  (Id. at 12-13, 15 [CALCRIM

17 226, 301].)  With respect to conflicts in the evidence, they were

18 specifically instructed not simply to count the number of

19 witnesses and accept or reject the greater number, not to favor a

20 side without a reason or because of a prejudice, but rather to

21 consider whether the testimony or any other evidence was

22 convincing.  (Id. at 16 [CALCRIM 302].)  They were instructed to

23 decide whether the defendant made any oral or written statements

24 before trial and to decide how much importance to give to them;

25 they were also instructed on the corpus delicti rule with respect

26 to two counts.  (Id. at 21-22 [CALCRIM 358, 359].)  The jury was

27 also instructed to attend to the instructions carefully and to

28

1  consider them together.  (Id. at 3 [CALCRIM 200].)

2      With respect to matters more directly affecting the
3  presumption of innocence, the jurors were instructed that the
4  defendant had an absolute, constitutional right not to testify
5  and not to have any adverse inference drawn from a failure to
6  testify.  They were instructed that the defendant could rely on
7  the state of the evidence and argue that the People had failed to
8  prove the charges beyond a reasonable doubt.  (Id. at 20 [CALCRIM
9  355].)  The judge instructed on the necessity of the union or
10 joint operation of act and wrongful intent.  (Id. at 33 [CALCRIM
11 252].

12          C.  Analysis

13     Petitioner argues that instructing the jury pursuant to
14 CALCRIM number 220 concerning prosecutor's the burden of proof
15 violated his Sixth and Fourteenth Amendment rights because it
16 failed to apprise the jury correctly of the presumption of
17 Petitioner's innocence, which was contrary to Victor v. Nebraska,
18 511 U.S. 1 (1994).  Petitioner contends that instructions on the
19 presumption were undermined by language instructing the jury to
20 compare impartially and consider all the evidence that was
21 received throughout the entire trial in determining whether the
22 prosecutor had established guilt beyond a reasonable doubt.
23 Petitioner argues that this language supplanted other
24 instructions with a lesser civil standard of impartiality because
25 it implied weighing two opposed sets of evidence on scales in a
26 balancing process, and thus a standard of proof of guilt by a
27 preponderance of the evidence.

28

1   When a conviction is challenged in a proceeding pursuant to

2  28 U.S.C. § 2254 on the basis of error in jury instructions, a

3  district court's review is informed by two clearly established

4  rules.

5   First, the United States Supreme Court has held that a

6  challenge to a jury instruction solely as an error under state

7  law does not state a claim cognizable in federal habeas corpus

8  proceedings.  Estelle v. McGuire, 502 U.S. at 71-72.  A claim

9  that an instruction was deficient in comparison to a state model

10  or that a trial judge incorrectly interpreted or applied state

11  law governing jury instructions does not entitle one to relief

12  under § 2254, which requires violation of the Constitution, laws,

13  or treaties of the United States.  28 U.S.C. §§ 2254(a),

14  2241(c)(3).

15   Here, the Court addresses Petitioner's claim concerning the

16  instructions not as one based on state law, but rather only as an

17  alleged violation of the Due Process Clause of the Fourteenth

18  Amendment.

19   Secondly, the only basis for federal collateral relief for

20  instructional error is that the infirm instruction or the lack of

21  instruction by itself so infected the entire trial that the

22  resulting conviction violates due process.  Estelle, 502 U.S. at

23  72; Cupp v. Naughten, 414 U.S. 141, 147 (1973); see, Donnelly v.

24  DeChristoforo, 416 U.S. 637, 643 (1974) (noting that it must be

25  established not merely that the instruction was undesirable,

26  erroneous or even "universally condemned," but that it violated

27  some right guaranteed to the defendant by the Fourteenth

28

1  Amendment).  Further, the instruction may not be judged in

2  artificial isolation, but must be considered in the context of

3  the instructions as a whole and the trial record.  <u>Estelle</u>, 502

4  U.S. at 72.

5      In addition, in reviewing an ambiguous instruction, it must

6  be determined whether there is a reasonable likelihood that the

7  jury has applied the challenged instruction in a way that

8  violates the Constitution.  <u>Estelle</u>, 502 U.S. at 72-73

9  (reaffirming the standard as stated in <u>Boyde v. California</u>, 494

10 U.S. 370, 380 (1990)).  The Court in <u>Estelle</u> emphasized that the

11 Court had defined the category of infractions that violate

12 fundamental fairness very narrowly, and that beyond the specific

13 guarantees enumerated in the Bill of Rights, the Due Process

14 Clause has limited operation.  <u>Id.</u> at 72-73.

15     It is an essential requirement of due process that the

16 government must prove beyond a reasonable doubt every fact

17 necessary to constitute the charged offense.  <u>In re Winship</u>, 397

18 U.S. 358, 364 (1970).  However, the Constitution requires only

19 that the jury be instructed on the necessity that the defendant's

20 guilt be proved beyond a reasonable doubt; it does not require

21 that any particular form of words be used in advising the jury of

22 the government's burden of proof.  <u>Jackson v. Virginia</u>, 443 U.S.

23 307, 320, n.14 (1979).  Taken as a whole, the instructions must

24 correctly convey the concept of reasonable doubt to the jury.

25 <u>Victor v. Nebraska</u>, 511 U.S. 1, 5 (1994).  The constitutional

26 question is whether there is a reasonable likelihood that the

27 jury understood the instructions to allow conviction based on

28

1  proof insufficient to meet the Winship standard.  Victor, 511

2  U.S. 6; Lisenbee v. Henry, 166 F.3d 997, 999 (9th Cir. 1999),

3  cert. den. 528 U.S. 829 (1999).

4       Likewise, instruction as to the presumption of innocence is

5  fundamental.  See, Coffin v. U.S., 156 U.S. 432, 461 (1895)

6  (reversing where the trial court instructed on reasonable doubt

7  but refused to instruct on the presumption, and where other

8  instructions concerned shifting the burden of proof).

9       With respect to the reasonable doubt instruction, Petitioner

10 argues that the language concerning an "abiding conviction" was

11 insufficient to convey the weight of the prosecution's burden of

12 persuasion.  However, in Victor v. Nebraska, 511 U.S. 1, the

13 Court approved language concerning an abiding conviction to a

14 moral certainty in light of other instructions tying the decision

15 to consideration of all the evidence.  The Victor court found

16 that an instruction "cast in terms of an abiding conviction as to

17 guilt, without reference to moral certainty, correctly states the

18 government's burden of proof." Id. at 14–15.  CALCRIM 220 defines

19 reasonable doubt in terms of an abiding conviction; thus it was

20 not unreasonable for the state court to conclude that CALCRIM 220

21 did not offend clearly established Supreme Court precedent.

22      Petitioner specifically contends that instructions on the

23 presumption of innocence were undermined by the language

24 instructing the jury to compare impartially and consider all the

25 evidence that was received throughout the entire trial in

26 determining whether the prosecutor had established guilt beyond a

27 reasonable doubt.  Petitioner argues that this language

28

1  supplanted other instructions with a lesser civil standard of
2  impartiality because it implied weighing two opposed sets of
3  evidence on scales in a balancing process, and thus a standard of
4  proof of guilt by a preponderance of the evidence.

5      Petitioner's argument involves both the presumption of
6  innocence and the burden of proof.  With respect to the
7  presumption of innocence, the jury received an express
8  instruction on the presumption and its concomitant requirement of
9  affirmative proof by the People beyond a reasonable doubt.
10 Although the reasonable doubt instruction in CALCRIM 220 referred
11 to "all the evidence received throughout the entire trial," that
12 reference was framed by immediate references to the burden of
13 proof beyond a reasonable doubt.  (I Supp. No. 2 CTA, 7.)  Thus,
14 it is not reasonably likely that a jury would understand that the
15 reference upset or modified the presumption of innocence.

16     Further, the basic instruction on the presumption of
17 innocence was reinforced by a specific instruction on the
18 prohibition against drawing inferences from the defendant's
19 exercise of the right to remain silent.  The jury was expressly
20 instructed concerning the right of a defendant to rely on the
21 state of the evidence and argue that the People had failed to
22 prove the charges beyond a reasonable doubt.  This direction is
23 fundamentally at odds with a weighing process in which the force
24 of the presumption is diluted or undercut.

25     The record does not support Petitioner's contention that the
26 instruction to consider all the evidence supplanted the standard
27 of proof beyond a reasonable doubt with a preponderance standard.
28

1   The jury was not only instructed on the reasonable doubt

2   standard, but was also informed that all references to proof by

3   the People was to proof beyond a reasonable doubt unless there

4   were specific instructions to the contrary.   Instructions in the

5   one instance of use of the preponderance standard emphasized that

6   the People retained the burden of proof on each element of every

7   charge beyond a reasonable doubt.   Thus, the application of the

8   standard of a preponderance of the evidence was clearly

9   circumscribed.   Further, the basic reasonable doubt instruction

10  was reinforced by a reasonable doubt instruction on

11  circumstantial evidence.

12      Finally, many instructions emphasized that individual

13  factual findings depended upon the consideration of multiple

14  factors and did not reduce to a simple weighing process of

15  evidence on a scale.   The jurors were directed to consider

16  specific factors in evaluating credibility, testimony, and

17  conflicts in the evidence.   They were specifically instructed

18  that resolving conflicts in the evidence was not to be based on a

19  simple count of the number of witnesses, but rather on a

20  consideration of whether the specific evidence was convincing.

21      Petitioner argues that the instant case is like that of

22  Coffin v. United States, 156 U.S. 43.   However, in Coffin, the

23  trial court refused to instruct on the presumption of innocence.

24      If all the instructions are considered together, it is not

25  reasonably likely that a reasonable juror understood the

26  instructions to allow conviction based on proof insufficient to

27  meet the Winship standard.   The instructions did not suggest an

28

35

1  impermissible definition of reasonable doubt to the jury, lower
2  the prosecution's standard of proof, or raise the amount of doubt
3  that the jury required for an acquittal.   Further, they did not
4  dilute or supplant the presumption of innocence.

5     The Court concludes that the state court decision concerning
6  CALCRIM 220 was not contrary to, or an unreasonable application
7  of, clearly established federal law within the meaning of 28
8  U.S.C. § 2254(d).   Accordingly, Petitioner's claim concerning the
9  reasonable doubt instruction will be denied.

10    VII.  <u>Cumulative Error</u>

11    Petitioner argues that the cumulative effect of the errors
12 committed at his trial rendered the proceedings fundamentally
13 unfair in violation of his right to due process of law under the
14 Fourteenth Amendment.

15    This circuit has recognized that the Supreme Court has
16 determined that the combined effect of multiple trial court
17 errors violates due process where it renders the resulting
18 criminal trial fundamentally unfair, even though no single error
19 rises to the level of a constitutional violation or would
20 independently warrant reversal.  <u>Parle v. Runnels</u>, 505 F.3d 922,
21 927 (9th Cir. 2007) (citing <u>Chambers v. Mississippi</u>, 410 U.S.
22 284, 298, 302-03 (1973)).  Traditional principles of due process
23 provide that cumulative errors warrant habeas relief only where
24 the errors have so infected the trial with unfairness that the
25 resulting conviction denies due process, such as where the
26 combined effect of the errors had a substantial and injurious
27 effect or influence on the jury's verdict, <u>id.</u> (citing <u>Donnelly</u>
28

36

1  v. DeChristoforo, 416 U.S. at 643 and Brecht v. Abrahamson, 507

2  U.S. at 637), and where the combined effect of individually

3  harmless errors renders a criminal defense far less persuasive

4  than it might otherwise have been, id. (citing Chambers, 410 U.S.

5  at 294, 302-03).

6      In evaluating a due process challenge based on the

7  cumulative effect of multiple trial errors, a reviewing court

8  must determine the relative harm caused by the errors.  If the

9  evidence of guilt is otherwise overwhelming, the errors are

10 considered "harmless," and the conviction will generally be

11 affirmed.  Parle v. Runnels, 505 F.3d at 927-28 (9th Cir. 2007).

12 The overall strength of the prosecution's case must be considered

13 because where the government's case on a critical element is

14 weak, or where the verdict or conclusion is only weakly supported

15 by the record, it is more likely that trial errors will be

16 prejudicial to the defendant.  Id. at 928.

17     Here, there were no errors in Petitioner's trial proceedings

18 that violated his Constitutional rights.  Thus, his claim of

19 cumulative error fails.  In any event, there was strong evidence

20 of Petitioner's guilt, including the testimony of the victim and

21 of Cristomo Luna, the gentleman who called the police because he

22 feared Petitioner would kill the victim; the victim's injuries,

23 her distress upon law enforcement's arrival on the scene, and her

24 statements to law enforcement; Petitioner's own extra-judicial

25 statements in the form of recorded telephone calls, in which he

26 threatened the victim and repeatedly admitted hitting or hurting

27 her; and evidence concerning Petitioner's prior abusive conduct,

28

1  including the prior conviction and the restraining order.  Even

2  assuming there had been error and some potential prejudice, there

3  were no errors that so infected the trial with unfairness that

4  the resulting conviction denied due process, or errors that

5  otherwise had a substantial and injurious effect or influence on

6  the jury's verdict.

7       In summary, the state court could reasonably have decided

8  that there was no cumulative error that denied Petitioner due

9  process of law.  Accordingly, Petitioner's claim of cumulative

10  error will be denied.

11      VIII.  <u>Certificate of Appealability</u>

12      Unless a circuit justice or judge issues a certificate of

13  appealability, an appeal may not be taken to the Court of Appeals

14  from the final order in a habeas proceeding in which the

15  detention complained of arises out of process issued by a state

16  court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537

17  U.S. 322, 336 (2003).  A certificate of appealability may issue

18  only if the applicant makes a substantial showing of the denial

19  of a constitutional right.  § 2253(c)(2).  Under this standard, a

20  petitioner must show that reasonable jurists could debate whether

21  the petition should have been resolved in a different manner or

22  that the issues presented were adequate to deserve encouragement

23  to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336

24  (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A

25  certificate should issue if the Petitioner shows that jurists of

26  reason would find it debatable whether the petition states a

27  valid claim of the denial of a constitutional right and that

28

1  jurists of reason would find it debatable whether the district

2  court was correct in any procedural ruling.  Slack v. McDaniel,

3  529 U.S. 473, 483-84 (2000).

4       In determining this issue, a court conducts an overview of

5  the claims in the habeas petition, generally assesses their

6  merits, and determines whether the resolution was debatable among

7  jurists of reason or wrong.  Id.  It is necessary for an

8  applicant to show more than an absence of frivolity or the

9  existence of mere good faith; however, it is not necessary for an

10 applicant to show that the appeal will succeed.  Miller-El v.

11 Cockrell, 537 U.S. at 338.

12      A district court must issue or deny a certificate of

13 appealability when it enters a final order adverse to the

14 applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

15      Here, it does not appear that reasonable jurists could

16 debate whether the petition should have been resolved in a

17 different manner.  Petitioner has not made a substantial showing

18 of the denial of a constitutional right.

19      Accordingly, the Court will decline to issue a certificate

20 of appealability.

21      IX.  Disposition

22      Accordingly, it is ORDERED that:

23      1)  The petition for writ of habeas corpus is DENIED; and

24      2)  The Clerk is DIRECTED to enter judgment for Respondent;

25 and

26 ///

27 ///

28

1      3)   The Court DECLINES to issue a certificate of

2  appealability.

3

4  IT IS SO ORDERED.

5  **Dated:    May 4, 2012**                          /s/ Sheila K. Oberto
                                          UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28